UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

GUSTAVO GUTIERREZ
HERNANDEZ,

     *Petitioner*,

v.                           Case No. 3:26-cv-619-JEP-PDB

SECRETARY MARKWAYNE MULLIN,[1]
et al.,

     *Respondents*.

_____/

## <u>ORDER</u>

Through counsel, Petitioner, a detainee of the United States Immigration and Customs Enforcement ("ICE"), filed an amended petition for a writ of habeas corpus under 28 U.S.C. § 2241 on March 25, 2026.[2] (*See generally* Doc. 4). Petitioner argues, among other things, that his prolonged detention violates the Fifth Amendment's Due Process Clause as the Supreme Court construed it in *Zadvydas v. Davis*, 533 U.S. 678 (2001). (*See id.* at 8–11). He asks the Court to order his release. (*Id.* at 14).

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Markwayne Mullin is automatically substituted for Kristi Noem.

[2] Petitioner filed his initial petition two days earlier—on March 23, 2026. (*See generally* Doc. 1).

The Federal Respondents filed a response in opposition to the petition. (*See generally* Doc. 9). According to the Federal Respondents, Petitioner has impeded his removal and, thus, the Court should toll the presumptively reasonable time period. (*Id.* at 6–7). In addition, they argue that Petitioner has not shown that "his removal is not significantly likely to occur in the reasonably foreseeable future." (*Id.* at 8). Petitioner filed a reply. (*See generally* Doc. 10). Upon review of the parties' filings, the Court finds that the petition must be granted.

## I.

Petitioner, a citizen of Cuba, arrived in the United States in 1968 when he was a newborn. (Doc. 4 at 3–4). In 1992, he was convicted of possession of marijuana and cocaine. (*Id.* at 4). Due to his conviction, United States Citizenship and Immigration Services denied his application to become a lawful permanent resident on February 15, 2008. (*Id.*). An immigration judge ordered Petitioner removed on July 17, 2008. (*Id.*). The next day, July 18, 2008, ICE placed Petitioner on an order of supervision ("OSUP"). (*Id.* at 5). On September 23, 2025, ICE arrested Petitioner following a traffic stop. (*Id.*). And on February 1, 2026, ICE revoked Petitioner's OSUP and provided him with an informal interview. (Doc. 9-8 at 2). ICE issued to Petitioner a notice of removal to Mexico on March 17, 2026, and Petitioner refused to sign it. (Doc. 9-10 at 1).

On June 9, 2026—more than a month after the Federal Respondents filed their response to the amended petition (*see* Doc. 9)—a deportation officer authored a declaration explaining ICE's position with respect to Petitioner's likelihood of removal:

> The petitioner is subject to a final order of removal, specifically an order of exclusion issued by an Immigration Judge on July 17, 2008. This order remains valid, enforceable, and unexecuted. Accordingly, ICE officers were acting within their lawful authority to carry out the petitioner's removal.
>
> On or about May 8, 2026, officers with the U.S. Immigration and Customs Enforcement (ICE), Enforcement Removal Operations (ERO), attempted to execute the removal of the petitioner, Gustavo Guiterrez Hernandez (A# 018-209-575), to Mexico via the Hidalgo, Texas Port of Entry. The petitioner was transported to the port of entry for the purpose of effectuating removal to Mexico. The petitioner refused to comply with lawful instructions to exit the transport bus and remained on the transport bus. The petitioner was provided multiple opportunities for voluntary compliance and clearly advised the petitioner that his removal was being executed pursuant to a final order of exclusion issued by an Immigration Judge, and that no additional consent, signature, or documentation was required for ICE to carry out that order. On that same date petitioner was booked out of custody with the intent to execute the removal to Mexico. After seeing that information reflected on our custody data, I completed the departure portion of form I-205, assuming that removal to Mexico was executed. I was later notified that petitioner was booked into ICE custody after failing to comply and refused to depart to Mexico. OPLA [(Office of the Principal Legal Advisor)] was immediately notified of the petitioner's failure to comply and to disregard the I-205. The petitioner's refusal to comply was not based on any legal impediment to removal, but rather a voluntary

and deliberate decision to disregard lawful instructions.

(Doc. 13 at 2).[3]

## II.

Following an order of removal, immigration detention is governed by 8 U.S.C. § 1231. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 544 (2021) ("§ 1231 explains what to do if the alien is ordered removed."); *see also Deshati v. Noem*, No. 25-cv-15940-ESK, 2025 WL 3204227, at *2 (D.N.J. Nov. 17, 2025) ("The statute governing post-final order of removal immigration detention is 8 U.S.C. § 1231."). Pursuant to section 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." Detention during the removal period is mandatory. 8 U.S.C. § 1231(a)(2)(A). "The 90-day removal period shall be extended, and the noncitizen may remain in detention, if the noncitizen (1) 'fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure' *or* (2) 'conspires or acts to prevent the alien's removal.'"

---

[3] The Federal Respondents filed an additional declaration by a different deportation officer that is virtually identical to the first one. (*See generally* Doc. 14). The only difference between the two declarations is that the first declaration contains additional information about ICE's attempts to remove Petitioner on May 8, 2026. (*Compare* Doc. 13 at 2 (recounting Petitioner's transportation to the port of entry, his refusal to comply with ICE instructions, the deportation officer's completion of a departure form, and Petitioner being booked out of and back into custody) *with* Doc. 14 at 2 (recounting Petitioner's transportation to the port of entry and refusal to comply with ICE instructions)).

*Singh v. U.S. Att'y Gen.*, 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(C)).

The Supreme Court in *Zadvydas* held that indefinite detention of aliens after a final order of removal raises serious constitutional concerns. 533 U.S. at 690–99. Once an order of removal is final, the government may continue to detain an alien only for a reasonable amount of time. *See id.* at 699–701. The reasonableness of the detention is to be measured "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence *at the moment of removal.*" *Id.* at 699 (emphasis added). The Supreme Court held that six months is a presumptively reasonable period to detain a removable alien awaiting deportation. *Id.* at 700–01. "Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period [from section 1231(a)(1)(A)] plus 90 days thereafter." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002).

After that six-month period has passed, if the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 1052 (quoting *Zadvydas*, 533 U.S. at 701). Thus, "in order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in

the reasonably foreseeable future." *Id.* If an alien makes these showings, then the burden shifts to the government to rebut the presumption with sufficient evidence establishing that there is a "significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Notably, *Zadvydas* claims asserted prior to the presumptively reasonable six-month period are deemed unripe and subject to dismissal without prejudice. *See Akinwale*, 287 F.3d at 1052; *see also Ramos Alvarez v. U.S. Immigr. & Customs Enf't*, No. 3:25-cv-1038, 2025 WL 2591830, at *1 (M.D. Fla. Sept. 8, 2025).

### III.

Here, Petitioner was taken into ICE custody on September 23, 2025, and he filed this case on March 23, 2026—well over six months after his re-detention. (*See* Doc. 4 at 5; *see generally* Doc. 1). Although Petitioner had been in ICE custody longer than 180 days when this case was filed, the Federal Respondents ask the Court to toll the six-month period because Petitioner "has refused to sign the Notice of Removal required to begin the process of staging Petitioner for removal to Mexico." (Doc. 9 at 7).

Section 1231(a)(1)(C) permits the "removal period" to be extended "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C).

Courts have applied § 1231(a)(1)(C) differently when addressing a *Zadvydas* claim:

> Many courts conduct an analysis using the burden-shifting framework from *Zadvydas*, considering an alien's failure to cooperate in determining whether the alien can show "good cause" to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Other courts contend that an alien's failure to cooperate precludes an analysis under *Zadvydas* altogether. Finally, some courts find an alien's failure to cooperate or filing of litigation equitably tolls, possibly indefinitely, the six-month removal period. In fact, a couple of courts covered both bases finding obstruction tolled the removal period, and in the alternative, the alien did not meet the *Zadvydas* standard.

*Glushchenko v. United States Dep't of Homeland Sec.*, 566 F. Supp. 3d 693, 705–06 (W.D. Tex. 2021) (footnotes omitted). In *Akinwale*, the Eleventh Circuit recognized that the six-month period may be tolled if the alien "'acts to prevent [his] removal'" by filing litigation "challeng[ing] issues related to his removal order and his post-removal period detention." *Akinwale*, 287 F.3d at 1052 n.4 (quoting 8 U.S.C. § 1231(a)(1)(C)). More recently, the Eleventh Circuit noted that "if the removal period was extended by operation of § 1231(a)(1)(C), then ICE can continue to detain [the petitioner] because 'the keys to [the petitioner's] freedom [are] in his pocket and [he] could likely effectuate his removal by providing the information requested,' so he 'cannot convincingly argue that there is no significant likelihood of removal.'" *Singh*, 945 F.3d at 1314 (quoting *Pelich v. Immigration & Naturalization Serv.*, 329 F.3d 1057,

1060 (9th Cir. 2003)); *see Vaz v. Skinner*, 634 F. App'x 778, 782 (11th Cir. 2015)[4] ("Because Petitioner is responsible for thwarting his removal, he cannot show that there is no reasonable likelihood that he will not be removed in the reasonably foreseeable future if he cooperates with DHS and voluntarily signs for the travel document."); *Oladokun v. U.S. Att'y Gen.*, 479 F. App'x 895, 897 (11th Cir. 2012) ("Oladokun fails to 'provide[ ] good reason to believe that there is no significant likelihood of [his] removal in the reasonably foreseeable future,'" because his "non-cooperation is the only barrier to his removal." (quoting *Zadvydas,* 533 U.S. at 701).

Here, the Federal Respondents have not shown that Petitioner's "failure to sign" was akin to a "refus[al] to make timely application in good faith for travel or other documents necessary" for his removal or that his "failure to sign" otherwise prevented his removal. 8 U.S.C. § 1231(a)(1)(C). The document that Petitioner refused to sign is a notice to him about ICE's intention to remove him, not an application for travel documents or form that would otherwise appear to assist in his removal. (*See* Doc. 9-10 at 1). While the Federal Respondents state that Petitioner's signature on the notice of removal

---

[4] This Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when this Court finds them persuasive on a particular point. *See McNamara v. GEICO*, 30 F.4th 1055, 1060-61 (11th Cir. 2022); Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

is "required to begin the process of staging Petitioner for removal," (Doc. 9 at 7), they fail to provide any support for that statement. Indeed, if his signature is required to begin the process of staging him for removal, then it is even more unclear how ICE could have "formulated a strategy to effectuate his removal order and . . . attempt a third-country removal to Mexico," as the Federal Respondents assert in their response. (*See* Doc. 9 at 8–9). Simply put, the Federal Respondents fail to support their position.

To the extent the Federal Respondents base their position on the deportation officer's averment that Petitioner refused to comply with lawful instructions to exit a transport bus at the border on May 8, 2026, the officer does not provide any context to his assertion or otherwise explain the circumstances that occurred there.[5] It is unclear whether ICE transported Petitioner to the border and essentially asked him to voluntarily depart, whether ICE had ever previously communicated with Mexico regarding Petitioner, or whether ICE even had an approved plan for removal to Mexico that Petitioner actually thwarted in some way. Further, assuming that Mexico was willing to accept Petitioner, the officer does not explain why ICE could not or did not thereafter seek travel documents for Petitioner or otherwise plan for

---

[5] The Federal Respondents do not rely on the declaration in their response. (*See generally* Doc. 9). Indeed, the officer authored it over a month after they filed their response—on June 3, 2026. (*See* Doc. 13 at 3).

his removal to Mexico via a different way, such as a charter flight. And, in any event, there was effectively no time left in Petitioner's six-month period to toll on May 8, 2026, because Petitioner was detained by ICE on September 23, 2025, and his order of removal had long been final. (*See* Doc. 4 at 5). Thus, the Court finds that the presumptively reasonable six-month period of detention expired prior to Petitioner filing the petition.

The Court also finds that Petitioner has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Petitioner's order of removal became final in 2008, and he was released on an OSUP the same year. (Doc. 4 at 4–5). He contends that he was re-detained on September 23, 2025, and "there is no reasonably foreseeable likelihood of effectuating the outstanding order of removal entered against him." (*Id.* at 5, 11). Petitioner has now been detained for more than ten months, yet ICE still has been unable to remove him. Thus, the burden shifts to Respondents to "respond with evidence sufficient to rebut [Petitioner's] showing." *Akinwale*, 287 F.3d at 1052. As explained below, the Federal Respondents fail to do so.

The Federal Respondents argue that there is a significant likelihood of Petitioner's removal because "ICE has formulated a strategy to effectuate his removal order and intends to attempt a third-country removal to Mexico . . . [on] April 27, 2026." (Doc. 9 at 8–9 (emphasis omitted)). However, ICE did not

remove him on that date, (*see generally* Doc. 12), and ICE records reflect that Petitioner is still in custody, *see* Online Detainee Locator System, U.S. Immigration and Customs Enforcement, available at https://locator.ice.gov/odls/#/results (last visited Aug. 3, 2026). Consequently, Petitioner has now been in ICE custody for approximately ten months—four months longer than the presumptively reasonable period—with ICE being unable to remove him or otherwise provide any details on when or to where he will be removed. *See Zadvydas,* 533 U.S. at 701 ("[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely . . . shrink[s].").

Thus, based on the evidence presented, the Court finds that the Federal Respondents have failed to show a significant likelihood that Petitioner will be removed in the reasonably foreseeable future. Therefore, Petitioner is entitled to release from detention under *Zadvydas*. However, Petitioner's release "shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3); *Zadvydas*, 533 U.S. at 699–700 (holding that when continued detention is unreasonable because removal is not reasonably foreseeable, "the alien's release may and should be conditioned on any of the various forms of supervised release.").

11

Accordingly, it is **ORDERED**:

1. Petitioner's amended petition for a writ of habeas corpus under 28 U.S.C. § 2241 (Doc. 4) is **GRANTED** as to his *Zadvydas* claim.[6] Respondents shall release Petitioner, subject to supervision pursuant to 8 U.S.C. § 1231(a)(3), **within 24 hours** of this Order, and they shall provide Petitioner with access to a telephone to arrange transportation from the detention facility.

2. The Clerk is **DIRECTED** to enter judgment granting the petition, terminate any motions, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida on August 5, 2026.

JORDAN E. PRATT
UNITED STATES DISTRICT JUDGE

c:
Gustavo Gutierrez Hernandez
Counsel of Record

---

[6] Because the Court grants relief on Petitioner's *Zadvydas* claim, the Court need not address Petitioner's other claims. *See Banks v. Dretke*, 540 U.S. 668, 689 n.10 (2004) (declining to address an additional claim in a habeas petition after granting relief on another claim because "any relief [petitioner] could obtain on that claim would be cumulative").